**In re NEWPORT OFFSHORE, LTD., Debtor.**

**NEWPORT HARBORFRONT INVESTORS, Plaintiff,**

v.

**NEWPORT OFFSHORE, LTD., Defendant.**

**Bankruptcy No. 8500723. Adv. No. 891035.**

United States Bankruptcy Court, D. Rhode Island.

June 13, 1989.

Louis A. Geremia, Quinn, Cuzzone & Geremia, Providence, R.I., for debtor.

Paul J. Bogosian, Hodosh, Spinella & Angelone, Providence, R.I., for plaintiff.

Matthew J. McGowan, Salter, McGowan, Swartz & Holden, Providence, R.I., for trustee.

John R. Allen, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Bank of New England.

## ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on May 23, 1989, on the Complaint of Newport Harborfront Investors ("NHI"), the lessor, for eviction of the debtor-lessee, Newport Offshore Ltd. ("NOL"), from the premises at One Washington Street, Newport, Rhode Island. NHI emphatically and persistently presses its position that the issue before the Court is very limited, and requires only a finding that NOL failed to make rent and/or tax payments, pursuant to R.I.Gen.Laws § 34–18.1–9, in order to entitle NHI to the relief it seeks.[1] NOL argues that the question of default, either in the form of rent or taxes, is inextricably related to other dealings between the parties, and should not be considered solely in the context of whether taxes or rent were received by NHI.[2] At the conclusion of the hearing, a number of questions remained and on May 25, 1989, the Court requested a chambers conference for clarification of the issues presented. During that conference, the parties agreed that the Court was expected to rule, inter alia, on how the sum of $100,000, originally placed on deposit with NHI pursuant to the Joint Venture Agreement, should have been applied.

That specific determination, in our view, is the controlling point for resolving the tax and rent arrearage issues, which we find are part and parcel of extensive other negotiations between the parties, and which may not be resolved in a vacuum, as urged by NHI. These dealings resulted in an entanglement of facts and issues which we find difficult to decide separately and independently; each conclusion necessarily involves one or more other issues. Consequently, our rulings below reflect this condition.

Based on the evidence and arguments of counsel, we make the following rulings on NHI's Complaint for eviction:

■ 1. NHI's unilateral decision to apply the $100,000 which it was holding under the Joint Venture Agreement (see Defendant's Exhibit C) to the April 3, 1987 promissory note was unauthorized and improper. The Joint Venture Agreement provided that "[i]n the event the conditions precedent to either the obligations of Allied or NHI are not favorably satisfied within 45 days of the execution of this letter of understanding, then, upon written request signed by Allied or NHI ... said deposit shall be returned to Allied." Although both NHI and NOL acknowledged that the 45 day deadline was mutually extended numerous times during their ongoing negotiations, by letter dated November 4, 1988 (see Plaintiff's Exhibit 9), Ronald Kutrieb, a NHI's general partner, informed Allied that the joint venture agreement had expired and that the $100,000 was being applied to other (unrelated) obligations. He

---

1. R.I.Gen.Laws 34–18.1–9 entitled "Delinquency in rent—Repossession by ejectment—Judgment", provides in relevant part that:

   (b)(1) If, in any case of nonresidential letting, whether by writing or parol, the stipulated rent, or any part of the same, be due and in arrear for a period of fifteen (15) days, whether demanded or not, the landlord or reversioner wishing to repossess him or herself of the lands, building or parts of buildings let, or recover possession of the same from the tenant, or any person holding under him

or her, shall without the necessity of notice, institute a trespass and ejectment action in the division of the district court, where the premises are situated, and in this action the court may award plaintiff judgment for possession and for all rent due plus costs.

2. For instance, NOL's response to the allegation of nonpayment of taxes and rent involves the alleged misapplication of a $100,000 payment by Allied Marine (the purchaser of NOL's stock) to NHI.

proclaimed "[a]s partial payment against the amount due, we have offset the deposit which you tendered against the now expired letter of understanding pertaining to our possible joint venture dated March 18, 1988." (Plaintiff's Exhibit 9.) Upon receipt of Kutrieb's letter, William Hustwit, President of Allied Marine, responded by letter dated November 17, 1988 (see Defendant's Exhibit E), in which he requested the return of the $100,000, and also referred to prior discussions with Kutrieb regarding the application of this money to the unpaid tax obligation. "As you are aware, we have been negotiating with the City of Newport for several weeks in an effort to work out a payment schedule for the unpaid real estate taxes. I informed you that in any event we would require the refund of the $100,000 deposit given to NHI pursuant to our joint venture agreement of March 18, 1988 in order to bring these taxes current." (Defendant's Exhibit E.) We find NHI's conduct in applying the $100,000 to a separate note, where the agreement specifically provided that the deposit would be refunded to Allied,[3] to be contrary to the express terms and the spirit of the agreement, and was the primary reason for NOL's failure to cure the tax arrearage at that time.[4]

■ 2. Since the wrongful conduct of NHI was a significant factor in the resulting tax and rental arrearage, NHI is therefore estopped from placing the onus for said default on the debtor. Had NHI returned the deposit money to Allied as it was obligated to do, the taxes would have been brought current and the subsequent tax sale by the City of Newport would not have occurred. We also find that the City's subsequent hard stance in requiring full payment of the tax arrearage was not reasonably foreseeable by NOL and thus, the responsibility for that circumstance shouldn't be placed at the debtor's feet, either.

■ 3. Based upon the above findings and conclusions, we will approve of the debtor's application of the disputed $100,000 to rent due for March, April, May, and one-third toward June, 1989. We also note NHI's failure to explain, to the satisfaction of this Court, why it failed to tender at least its own share of the mortgage payment to the Bank of New England, and again, we disapprove of its attempt to place the responsibility for the upcoming foreclosure sale entirely on the debtor.

4. Also, based on all of the above, we conclude that the alleged "default" in payment of rent or taxes by NOL or Allied, upon which NHI relied in terminating Allied's option to acquire one half (½) of the leasable lineal footage of marina slips, is unsupported by the facts. Consequently, the option is "revived", and constitutes an enforceable property right of Allied/NOL.

5. The numerous ongoing business dealings and negotiations between these parties resulted in a complicated entanglement of facts and issues, and the present predicament of the parties is not due to the acts of the debtor. Since NHI appears to be largely responsible for the plight in which NOL finds itself, vis-a-vis default, we conclude that the plaintiff has not met its burden of proof so as to entitle it to the relief it seeks.

6. In order to bring the parties back into compliance with the modification of lease agreement, dated April 3, 1987 (see Plaintiff's Exhibit 3, Defendant's Exhibit B), NOL is ordered to cure the outstanding tax arrearage, now due to the Bank of New

---

**3.** At the commencement of the hearing, NOL requested that Allied be joined as a party defendant, based on its involvement with both the plaintiff and the debtor. This motion was granted. Thus, throughout this opinion we refer to NOL and Allied interchangeably, and for purposes of this decision consider them, based on their mutual obligations to NHI, as the defendant/lessee of the subject property.

**4.** At that time, according to Hustwit, approximately $200,000 was owed to the City of Newport. While he agreed that the return of the deposit would have enabled NOL to only cure half of the amount owed, he testified, and we find as a fact, that NOL was then prepared to borrow the balance necessary to bring the taxes current.

England,[5] by July 7, 1989.

7. NHI's request for the eviction of NOL, based on nonpayment of rent, is DENIED, for the reasons stated above.

Enter Judgment accordingly.

5. The Bank of New England, to avoid a sale of the subject premises, paid the outstanding tax obligation to the City of Newport.